UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| G&M HARDWARE, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: 3:14-CV-1973-PPS-CAN |
| | ) | |
| DO IT BEST CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

G&M Hardware ("G&M") operated a hardware store in Twin Lakes, Wisconsin. For years, G&M was a member of Do It Best Corporation ("DIB"), a member-owned cooperative that supplies hardware stores. In 2012, however, G&M quit the cooperative. When G&M quit, DIB owed it around $23,000 for supply overpayments. In addition G&M owned over a thousand shares of DIB stock that DIB had agreed to redeem. G&M alleges DIB has neither paid the debt nor redeemed the stock.

This lawsuit was initially filed by G&M Variety, another hardware store with a bone to pick with DIB. G&M Hardware joined the suit and alleges that DIB breached its contract by not returning the overpayment and committed a criminal conversion when it refused to redeem the stock shares. Do It Best has moved to dismiss the conversion claim on the grounds that it is, in reality, an action for the repayment of a debt, and thus cannot support a conversion claim under Indiana law [DE 33]. For the following reasons, the motion is **DENIED**.

## BACKGROUND

This lawsuit was initiated in the Western District of Texas by G&M Variety, Inc. ("Variety"), an Illinois corporation that operated a hardware store in Northbrook, Illinois [DE 1]. Variety alleged claims against Do It Best arising out of the termination of a promotional agreement. The Texas judge ordered this case transferred to the Northern District of Indiana as the most appropriate venue [DE 12]. Do It Best is a member-owned hardware cooperative based in Fort Wayne, Indiana, and its alleged wrongful acts took place in Fort Wayne.

After the case was transferred here, G&M Hardware, a Wisconsin corporation that operated a hardware store in Twin Lakes, Wisconsin, moved to join the case [DE 25]. As the names suggests, the two G&Ms are related entities. They are represented by the same attorney, and, according to DIB, Third-Party Defendant Ronald Gadek serves as President of both [DE 34 at 2]. In its motion for joinder, G&M Hardware claimed that DIB used G&M Hardware's assets to pay the debt Variety owed DIB. The joinder motion was granted [DE 25], and G&M filed a complaint against DIB [DE 30].

In the complaint, which I will accept as true for present purposes, G&M alleges that it joined DIB in 2000. As a member, G&M agreed to stock its store with lumber, hardware, and building supplies purchased from DIB. In return, DIB distributed the profits it made from such sales back to G&M and the other members. A certain percentage of the profits were dispensed as cash, while the remainder were used to purchase "Preference Shares" of DIB stock. These shares are senior to DIB's Common

2

Shares and Non-Voting Common Shares, and have a liquidation preference value of $100 per share. According to the membership agreement, if a member terminates its relationship with DIB while owing money to DIB, DIB sets that debt off against the shares. Whatever Preference Shares are left after the debt is paid will be redeemed at the exiting member's request.

G&M quit DIB in 2012 by sending notice of termination of membership. At the time it quit, DIB owed G&M $23,971 as the result of overpayments. In addition, G&M owned 1,217 Preference Shares as well as 20 Common Shares. The Common Shares were valued at $20 each. All told, G&M expected to receive $23,971 in cash and $122,700 in redeemed shares for a total of $146,671. As it stands, however, they have received nothing. G&M alleges that DIB used the money and shares that G&M was owed to pay down Variety's debts to DIB.

In its complaint G&M states two causes of action. First, G&M alleges DIB breached its contract by failing to refund G&M's overpayment. Second, G&M alleges that DIB's failure to redeem the stock constitutes a criminal conversion in violation of Indiana Code § 35-43-4-3(a), which would entitle G&M to recover treble damages attorney's fees, and costs under Indiana Code § 34-24-3-1.

DIB has moved to dismiss the conversion claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that G&M has failed to state a claim upon which relief can be granted.

**DISCUSSION**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). Although at this stage I still must accept all allegations as true and draw all reasonable inferences in the Plaintiff's favor, I don't need to accept threadbare legal conclusions supported only by conclusory statements. *Id.*

Indiana Code § 35-43-4-3 provides that "a person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion." A person who has suffered a pecuniary loss as a result of a criminal conversion may bring a civil action to recover the loss, including attorney's fees and treble damages. Ind. Code § 34-24-3-1; *JET Credit Union v. Loudermilk*, 879 N.E.2d 594, 597 (Ind. Ct. App. 2008).

However, "the failure to pay a debt does not constitute criminal conversion as a matter of law." *Old Nat'l Bank v. Kelly*, 31 N.E.3d 522, 532 (Ind. Ct. App. 2015) (citing *Tobin v. Ruman*, 819 N.E.2d 78, 89 (Ind. Ct. App. 2004)); *see also Bowden v. Agnew*, 2 N.E.3d 743, 750-51 (Ind. Ct. App. 2014). Moreover, "money may be the subject of an action for conversion only if it is capable of being identified as a special chattel." *Bowden*, 2 N.E.3d at 750 (citing *Huff v. Biomet, Inc.*, 654 N.E.2d 830, 836 (Ind. Ct. App. 1995), abrogated on other grounds by *St. Vincent Hosp. & Health Care Ctr., Inc.*, 766 N.E.2d 699 (Ind. 2002)). The money must be "a determinate sum with which the

defendant was entrusted to apply to a certain purpose." *Id.* (quoting *Trietsch v. Circle Design Grp., Inc.*, 868 N.E.2d 812, 821-22 (Ind. Ct. App. 2007)); *see also Tobin*, 819 N.E.2d at 89.

DIB argues that G&M's conversion claim is really a debt repayment claim in disguise and so ought to be dismissed. G&M disagrees. Surprisingly, this is a commonly litigated issue. As Judge Hamilton wrote, "the siren song of treble damages has led many civil plaintiffs to try to stretch the criminal conversion statute to cases where no sensible prosecutor would try to bring a criminal case." *JPMorgan Chase Bank, N.A. v. Smith Bros. Builders & Supply*, 2009 WL 2413832, at *2 (S.D. Ind. July 27, 2009). So, for example, failure to pay on a promissory note is not a conversion. *See Burget v. R.A.M. Entertainment, LLC*, 2015 WL 4490938 (N.D. Ind. July 23, 2015). Nor is failing to distribute retained earnings to a minority shareholder or failing to distribute revenues to a partner in a partnership. *See Tobin*, 819 N.E.2d at 89; *Bowden*, 2 N.E.3d at 750. On the other hand it is a conversion when an attorney spends settlement proceeds earmarked for a client. *See In re Clayton*, 778 N.E.2d 404, 405 (Ind. 2002). Or when an employer fails to remit group health insurance premium payments withheld from employee paychecks. *See Roake v. Christensen*, 528 N.E.2d 789, 791 (Ind. Ct. App. 1988).

This case is a close one. In one sense, DIB is correct that, if you boil it down, G&M is essentially asking DIB to pay a debt. G&M claims DIB owes it money for the stock shares that DIB has confiscated. But the same can be said of the clients in *Clayton* whose attorney absconded with their settlement check. *See Clayton*, 778 N.E.2d at 405.

5

Or for the plaintiff in *Roake* whose employer pocketed the premium payments. Both sought to recover for money that was improperly taken from them.

What separates a legitimate conversion claim from a disguised debt action, however, is whether the plaintiff can point to some specifically identifiable property as opposed to an amount of money. *See Bowden*, 2 N.E.2d at 750 ("money may be the subject of an action for conversion only if it is capable of being identified as a special chattel"). Here, G&M can. It alleges that DIB has taken specific property: 1217 Preference Shares and 20 Common Shares of DIB stock owned by G&M [DE 30 ¶ 20].

The case *Kopis v. Savage*, 498 N.E.2d 1266 (Ind. Ct. App. 1986), is instructive. *Kopis* involved a failed real estate transaction. In *Kopis*, the thwarted buyer sued the seller for conversion after the seller failed to return the buyer's earnest money. *Id.* at 1270. The court held that there was no conversion because the money wasn't a specifically identifiable chattel. There was "no obligation to return *the specific* $40,000 which [the plaintiff] had given him." *Id.* And nothing in the agreement "indicat[ed] that the parties intended for the buyer to retain any ownership or possessory rights in the money." *Id.* Here, by contrast, G&M alleges it *did* retain ownership of its stock shares [DE 30 ¶ 20]. And it alleges that DIB did have an obligation to redeem those specific shares. *Id.* Because G&M alleges DIB exercised unauthorized control over its specifically identified property, it has sufficiently stated a claim for conversion.

One last thing. DIB argued that G&M's claim is barred by Indiana's two-year statute of limitations. While the statute of limitations is usually an affirmative defense,

plaintiffs can plead themselves out of court if they allege facts that demonstrate that a claim is time-barred. *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 675 (7th Cir. 2009) (dismissal appropriate where it is "clear from the face of the amended complaint that it is hopelessly time-barred"). That hasn't happened here, which is likely why DIB buried this argument in a footnote.

Although the complaint alleges that G&M left DIB in 2012, it does not allege the date when DIB committed the conversion by refusing to redeem the shares. G&M asserts in its brief that this did not occur until 2014. I trust that discovery will provide a definitive answer to this issue.

Accordingly, DIB's motion [DE 33] is **DENIED**.

**SO ORDERED**.

ENTERED: August 14, 2015    s/ Philip P. Simon
                            PHILIP P. SIMON, CHIEF JUDGE
                            UNITED STATES DISTRICT COURT